UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------x

In re: Times Square JV LLC, et al.,                                    Chapter 11

                                        Debtors.                        Case No.: 22-11715 (JPM)

-------------------------------------------------------------x


Times Square JV LLC,

                                        Plaintiff,                     Adv. Pro. No. 23-01008 (JPM)

            – v –

1601 Enterprises Inc. and Jacob BenMoha,

                                        Defendants.

-------------------------------------------------------------x


### MEMORANDUM OPINION AND ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT


*A P P E A R A N C E S :*

**SEWARD & KISSEL, LLP**
*Counsel for Times Square JV LLC*
One Battery Park Plaza
New York, New York 10006
By:     John R. Ashmead
            Noah Saul Czarny
            Robert Gayda
            Thomas Ross Hooper
            Mark D. Kotwick

**THE ESSES LAW GROUP, LLC**
*Counsel for 1601 Enterprises Inc. and Jacob BenMoha*
845 Third Avenue, 6th Floor
New York, New York 10022
By:     Leo L. Esses

**BLANK ROME LLP**
*Counsel for 1601 Enterprises Inc. and Jacob BenMoha*
1271 Avenue of the Americas
New York, New York 10020
By:     Massimo F. D'Angelo

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

This is an adversary proceeding arising from the bankruptcy case *In re: Times Square JV LLC, et al.*, Case No. 22-bk-11715 (December 28, 2022).[1]  Before the Court is the *Motion for Summary Judgment* filed by Plaintiff, Times Square JV LLC ("Plaintiff").  [Doc. 44]; *see also* [Doc. 45] (Plaintiff's accompanying *Memorandum of Law in Support of Plaintiff Times Square JV LLC's Motion for Summary Judgment*) (collectively, the "Motion").  Plaintiff argues that it is entitled to summary judgment with respect to three of the four claims against Defendants, 1601 Enterprises Inc. ("1601 Enterprises") and Jacob BenMoha ("Mr. BenMoha") (collectively, "Defendants").[2]  *See* [Doc. 45, p. 5]. C  Plaintiff also maintains that summary judgment is appropriate as to both of the counterclaims asserted by Defendants.  *Id.*

Defendants have filed their *Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment* (the "Opposition"), and Plaintiff has filed its *Reply Memorandum of Law in Further Support of Plaintiff Time Square JV LLC's Motion for Summary Judgment* (the "Reply")*.  See* [Docs. 52, 57].  After careful consideration, and for the reasons set forth below, the Court GRANTS the Motion in part and DENIES the Motion in part.

---

[1]    Unless otherwise specified, references to "[Doc. __]" are to filings entered on the docket in *Times Square JV LLC. v. 1601 Enterprises Inc., et al.*, Case No. 23-01008 (February 9, 2023).  References to "[Ch. 11 Dkt., Doc. __]" are to filings entered in the bankruptcy case *In re: Times Square JV LLC., et al.*, Case No. 22-bk-11715 (December 28, 2022).  References to "Bankruptcy Rule __" are to the Federal Rules of Bankruptcy Procedure.  References to "Local Rule __" are to the Local Bankruptcy Rules for the Southern District of New York.

[2]    The Motion indicates that Plaintiff "does not seek summary judgment [with] respect [to] the Second Cause of Action (Turnover), which [Plaintiff] hereby withdraws as such cause of action is no longer applicable."  [Doc. 45, p. 4 n. 2].  That claim is therefore DISMISSED.

# I.    <u>BACKGROUND</u>

Plaintiff is the owner of certain commercial real estate located at 1601 Broadway, New York, New York, 10019. [Doc. 4-1, p. 13]. A portion of that property (the "Premises") is leased by a restaurant called the Harrison (the "Restaurant"), which is owned and operated by Defendants. *See* [Doc. 48-2, p. 13] (deposition testimony of 1601 Enterprises' comptroller).

The parties' rights and obligations with respect to the Premises are governed by three documents: (i) a lease (the "Lease") executed by Plaintiff and 1601 Enterprises on April 9, 2019*, see* [Doc. 47-1]; and (ii) a "Good Guy Guarantee" and a "Limited Guarantee" (collectively, the "Guarantees"), both of which were executed by Mr. BenMoha and Plaintiff on April 2, 2019. [Doc. 55, pp. 15, 19]; *see also* [Doc. 47-2] (Good Guy Guarantee); [Doc. 47-3] (Limited Guarantee).

The relevant terms of the Lease provide as follows:

(i)    during the "First Rental Period," Section 1.4(A) provides that 1601 Enterprises is to pay "Fixed Rent" each month in an amount of $66,666.67, *see* [Doc. 55, p. 6];

(ii)    Section 1.4(A)(1)(a) provides that the "First Rental Period" began on February 28, 2020, and ended on February 27, 2022, *id*;

(iii)    Section 1.4(A)(1)(b) provides that, during the "Second Rental Period," 1601 Enterprises is to pay Plaintiff Fixed Rent in the amount of $83,333.34 per month, *id.* at p. 7;

(iv)    Section 1.4(a)(1)(b) defines the "Second Rental Period" as the three-year period following the end of the First Rental Period, that is, three years following February 28, 2022, *id.*;

(v)    Section 2.1(A) provides that, during the Term of the Lease and in addition to the applicable Fixed Rent amount, 1601 Enterprises must pay Plaintiff a monthly "Operating Expense" in an amount designated by Exhibit 2.1 of the Lease,[3] *id.* at p. 8;

---

[3]    Exhibit 2.1 of the Lease is a payment table designating different Operating Expenses for each calendar year. *See* [Doc. 47-1, p. 103].

(vi)     Section 19.1(A) of the Lease defines an "Event of Default" as, *inter alia*, 1601 Enterprises' "fail[ure] to pay any installment of Fixed Rent when due and such failure continues for ten (10) days after the date that Landlord [Plaintiff] gives notice of such failure to [1601 Enterprises]," *id.* at p. 9;

(vii)    when an Event of Default occurs, Section 21.3 provides that 1601 Enterprises "shall pay to [Plaintiff], on demand, and [Plaintiff] shall be entitled to recover [] all Rent payable . . . [up] to the date that this Lease terminates," *id.* at p. 10;

(viii)   Section 19.2 (entitled "Termination") provides that the Lease may Terminate if "(l) an Event of Default occurs, and (2) [Plaintiff], at any time thereafter, at [Plaintiff's] option, delivers a notice to [1601 Enterprises] stating that this Lease and the Term shall expire and terminate on the tenth (10th) Business Day after the date that [Plaintiff] gives [1601 Enterprises] such notice," *id.* at p. 9;

(ix)     Section 19.2 also provides that, upon Termination, "all rights of [1601 Enterprises] under this Lease shall expire and terminate . . . and [1601 Enterprises] immediately shall quit and surrender the Premises, but [1601 Enterprises] shall nonetheless remain liable for all of its obligations hereunder," *id.*;

(x)      Section 23.1 of the Lease (entitled "End of Term") provides that, upon Termination, 1601 Enterprises is obligated to "quit and surrender to [Plaintiff] the Premises, vacant, broom-clean, in good order and condition," *id.* at pp. 11–12;

(xi)     in the event 1601 Enterprises occupies the Premises beyond the Termination Date, Section 23.2 provides that 1601 Enterprises is liable for "Holdover Damages" in an amount dictated by the terms of Section 23.2,[4] *id.* at p. 11;

(xii)    Section 22.1 provides that, following an Event of Default, 1601 Enterprises must "pay to [Plaintiff] an amount equal to the actual costs, including, without limitation, attorneys' fees, expenses and disbursements, that Landlord incurs in (i) enforcing any obligation of [1601 Enterprises] or right of [Plaintiff] pursuant to this Lease . .

---

[4]      Section 23.2 specifically provides:

If vacant and exclusive possession of the Premises is not surrendered to [Plaintiff] on the [date of termination], then [Defendant] shall pay to [Plaintiff] on account of use and occupancy of the Premises, for each month (or any portion thereof) during which [Defendant] (or a Person claiming by, through or under [Defendant]) holds over in the Premises after [termination], an amount equal to the *greater of* (i) two (2) times the aggregate Rent that was payable under this Lease during the last month of the Term, and (ii) the then fair market rental value of the Premises. [Plaintiff's] right to collect such amount from [Defendant] for use and occupancy shall be in addition to any other rights or remedies that [Plaintiff] may have hereunder or at law or in equity (including, without limitation, [Plaintiff's] right to recover [Plaintiff's] damages from [Defendant] that derive from vacant and exclusive possession of the Premises not being surrendered to [Plaintiff] on the [date of termination]).

[Doc. 55, p. 11] (emphasis added).

. or (ii) instituting or prosecuting any legal proceeding against [1601 Enterprises] . . . together with interest thereon," *id.*;

(xiii)    Section 22.1 also provides that, following an Event of Default, 1601 Enterprises "shall pay to [Plaintiff] an amount equal to the actual costs, including, without limitation, attorneys' fees, expenses and disbursements, that [Plaintiff] incurs in defending successfully against a claim made by [1601 Enterprises] . . . against [Plaintiff] that relates to this Lease in a legal proceeding, together with interest thereon," *id.* at p. 12;

(xiv)    finally, Section 30.7 provides that the Lease "contains the entire agreement between the parties and supersedes all prior understandings, if any, with respect thereto" and, further, that the Lease "shall not be modified, changed, or supplemented, except by a written instrument executed by both parties," *id.* at p. 3.

The Guarantees supplement the terms of the Lease in several respects. First, the Good Guy Guarantee provides that Mr. BenMoha "guaranties to [Plaintiff], in accordance with and pursuant to this Guaranty, the full and timely payment and performance of all obligations of [1601 Enterprises] under the Lease (including, without limitation, Article 23 thereof) . . . ." [Doc. 55, p. 16].[5]  The Good Guy Guarantee also provides that "[i]f [Plaintiff] shall employ counsel to enforce [Mr. BenMoha's] obligations under this Guaranty . . . [Mr. BenMoha] agrees to pay on demand all of [Plaintiff's] costs in connection therewith . . . including, without limitation, attorneys' fees and disbursements."  [Doc. 47-2, p. 7].  Although the Limited Guarantee reiterates many of Mr. BenMoha's obligations under the Good Guy Guaranty, *see, e.g.*, [Doc. 47-3, pp. 3–5], the Limited Guaranty also caps Mr. BenMoha's "maximum cumulative liability" to an amount "equal to the sum of the Fixed Rent, Operating Expense Payment, Tax Payment and Percentage Rent payable under the Lease with respect to the period commencing on the Rent Commencement Date and

---

[5]    The Good Guy Guarantee also describes Mr. BenMoha's liability as "primary" and states that his guarantee of 1601 Broadway's obligations under the Lease was "an absolute and unconditional guaranty of payment and performance and not merely of collection." [Doc. 55, p. 17].

ending on the day immediately preceding the first anniversary of the Rent Commencement Date."

[Doc. 47-3, p. 3].

Defendants have occupied and intermittently operated their Restaurant since August 2, 2019.[6]    [Doc. 55, p. 9].    Although 1601 Enterprises' payment obligations began at the commencement of the First Rental Period (that is, February 28, 2020), neither Defendant has made any payments towards the Fixed Rent or Operating Expenses due under the Lease.    *See* [Doc. 55, p. 8].

Plaintiff served 1601 Enterprises with a Notice of Default on May 8, 2023.    *Id.* at pp. 13–14. On May 23, 2023, after 1601 Enterprises failed to cure its default, Plaintiff provided 1601 Enterprises with a Notice of Termination.    *Id.* at p. 14.    It is undisputed that both the Notice of Default and the Notice of Termination comply with the applicable provisions of the Lease.    *Id.*

## II.    <u>PROCEDURAL HISTORY</u>

Plaintiff filed its bankruptcy petition on December 28, 2022, pursuant to chapter 11 of the Bankruptcy Code.    *See In re: Times Square JV LLC., et al.*, Case No. 22-bk-11715 (December 28, 2022) ("Ch. 11 Dkt."). The Court approved Plaintiff's proposed Disclosure Statement on February 3, 2023.    [Ch. 11 Dkt., Doc. 172].    After a hearing held on March 16, 2023, the Court confirmed Plaintiff's *Third Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code* (the "Plan") pursuant to 11 U.S.C. 1129(a) on March 21, 2023.    [Ch. 11 Dkt., Doc. 260]; *see also* [Ch. 11 Dkt., Doc. 277] (hearing transcript).    Notably, as of the Plan's Effective Date, the Lease between Plaintiff and 1601 Enterprises was rejected as an "unexpired lease" within the meaning of 11 U.S.C. §§ 365 and 1123(b)(2).    [Ch. 11 Dkt., Doc. 260, p. 40].

---

[6]    According to Defendants, the COVID-19 pandemic caused the Restaurant to close for an extended period of time shortly after it opened in February 2020. *See* [Doc. 52, p. 5] (claiming that the pandemic "led to the closure of [Defendants'] restaurant, with a reopening only occurring in November 2022").

Plaintiff initiated the instant adversary proceeding on February 9, 2023. [Doc. 1]. Plaintiff's *Second Amended Adversary Complaint* (the "Complaint") asserts claims against both Defendants and seeks the following forms of relief:

(i)     pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*, Plaintiff requests a "judgment declaring that . . . the Lease terminated as of June 8, 2023," that "[1601 Enterprises] is required to quit and surrender to [Plaintiff] the Premises," that "[1601 Enterprises] is responsible for holdover damages pursuant to Section 23.2 of the Lease from September 1, 2022 until such time as [1601 Enterprises] surrenders vacant and exclusive possession of the Premises to [Plaintiff], and [Plaintiff] is entitled to a judgment of possession of the Premises," [Doc. 28, ¶ 68];

(ii)    Plaintiff also seeks turnover of the Premises pursuant to 11 U.S.C. § 541, *id*. at ¶ 79 (Plaintiff claims that 1601 Enterprises is "currently a holdover tenant and has no remaining property interest in the Premises as of September 1, 2022"); and

(iii)   Plaintiff asserts breach of contract claims under New York law against both Defendants arising from their alleged breaches of the obligations created by the Lease and the Guarantees*, id*. at ¶¶ 80–97.

Plaintiff filed the Motion on November 3, 2023. [Doc. 44]. As noted above, the Motion seeks summary judgment with respect to three of the four claims asserted by the Complaint. *See generally id.*; [Doc. 45]. Defendants filed their Opposition on December 6, 2023, and Plaintiff filed its Reply on December 20, 2023. *See* [Docs. 52, 57].

## JURISDICTION

The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157(a) and (b)(1) and the Amended Standing Order of Reference dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A).

## ANALYSIS

## I.   SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

Civ. P. 56(a). [7]  A fact is "material" if it is capable of "influencing the case's outcome under governing substantive law," and a dispute is "genuine" where the evidence in the record "would permit a reasonable juror to find for the party opposing the motion." *Figueroa v. Mazza*, 825 F.3d 89, 98 (2d Cir. 2016) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)).   When determining whether summary judgment is proper, the Court cannot "weigh the evidence, assess the credibility of witnesses, or resolve issues of fact" and must instead "draw all factual inferences in the light most favorable to the nonmoving party . . . ." *Rodriguez v. City of N.Y.*,72 F.3d 1051,1061 (2d Cir. 1995) (citations and internal quotation marks omitted).

A movant can establish its entitlement to summary judgment in two ways: (i) by offering affirmative evidence that "demonstrate[s] the absence of a genuine issue of material fact;" or (ii) if the burden of proof would fall on the nonmovant at trial, by simply "point[ing] to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008).   Should the movant carry its burden, the nonmovant must "come forward with admissible evidence sufficient to raise a genuine issue of fact for trial to avoid summary judgment." *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (citation and internal quotation marks omitted).   This requires the nonmovant to "go beyond the pleadings, and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Flowers v. Connecticut Light & Power Co.*, 774 F. App'x 33, 35 (2d Cir. 2019).

---

[7]     Rule 56 of the Federal Rules of Civil Procedure is made applicable to adversary proceedings by operation of Bankruptcy Rule 7056.

## II.  **BREACH OF CONTRACT**

### a.  **Plaintiff's Breach of Contract Claim Against 1601 Enterprises**

Plaintiff claims that it is "entitled to summary judgment on its claims against [1601 Enterprises] . . . for damages for the rent and other amounts owed by 1601 Enterprises to [Plaintiff]" because 1601 Enterprises has allegedly breached the Lease in the following respects:

(i)     Plaintiff claims that 1601 Enterprises breached Sections 1.4, 1.5, and 2.1 of the Lease by "fail[ing] to make any Fixed Rent payments from the Rent Commencement Date [i.e., February 28, 2020] through the [Termination] Date on June 8, 2023" and requests a judgment "requir[ing] 1601 Enterprises to pay the delinquent Fixed Rent and Operating Expense Payments . . . totaling $2,890,073.38," [Doc. 45, p. 19];

(ii)    Plaintiff also claims that 1601 Enterprises has breached Section 23.1 of the Lease by "failing to surrender the Premises after the [Termination] Date" and requests a judgment "obligat[ing] 1601 Enterprises to pay holdover damages, totaling . . . at least $166,666.68 per month, from June 8, 2023 until such time as [] 1601 Enterprises surrenders vacant and exclusive possession of the Premises to [Plaintiff]," *id.*; and

(iii)   finally, because Plaintiff has been forced to "prosecut[e] a[] legal proceeding against 1601 Enterprises . . . after the occurrence of an Event of Default," Plaintiff claims an entitlement to the "attorneys' fees, expenses and disbursements" contemplated by Section 22.1 of the Lease, *see id.*

Defendants' Opposition makes four arguments in response.  First, Defendants argue that the *Declaration of Joseph Chehova* (the "Chehova Declaration") [Doc. 47], submitted in support of Plaintiff's Motion, "should be deemed a nullity" because it "comprises nothing more than inadmissible hearsay and generalized, conclusory statements . . . ."  *See generally* [Doc. 52].  Second, the Opposition argues that Plaintiff engaged in conduct that "created a reasonable expectation for 1601 Enterprises to rely on" such that "it is appropriate for the Court to invoke [equitable estoppel] and recognize that granting [] Plaintiff's motion would result in a perversion of justice."  *Id.*  Third, Defendants argue that Plaintiff's rejection of the Lease during the course of its bankruptcy "negate[s] any rights the Plaintiff may assert under its terms . . . ."  *Id.*  Fourth, 1601

Enterprises argues that Plaintiff cannot "complain[] . . . that it was not paid under the terms of the Lease" because Plaintiff "did not abide by [two] prerequisite terms of the Lease . . . ." *See id.* at p. 11 (claiming that "Plaintiff did not provide [] 1601 Enterprises with written notice of the designation of the place to pay Fixed Rent . . . [or] the required [building permits]" as contemplated by the Lease). The Court addresses each of Defendants' arguments in turn, and then considers Plaintiff's request for summary judgment on its breach of contract claim.

### i.    *The Chehova Declaration Satisfies Federal Rule of Civil Procedure 56(c)(4)*

Federal Rule of Civil Procedure 56(c)(4) provides that an "affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." *Broad. Music, Inc. v. My Image Studios LLC*, 2020 WL 2115329, at *3 (S.D.N.Y. May 4, 2020). Where a declaration does not comply with these requirements, "the offending portions should be disregarded by the court." *Hastad v. Hippos In Tanks, LLC*, 2019 WL 1228076, at *3 (S.D.N.Y. Mar. 15, 2019),

The Opposition first argues that the Chehova Declaration "should be deemed a nullity" because it "comprises nothing more than inadmissible hearsay and generalized, conclusory statements" in violation of Federal Rule of Civil Procedure 56(c)(4). *See* [Doc. 52, p. 8]. Defendants argue that, given these alleged deficiencies, Plaintiff lacks a "valid and reliable declaration" and therefore "lacks substantive evidence to support its motion for summary judgment." *Id.*

This argument is unpersuasive in several respects. The Chehova Declaration—a three-page document executed by Joseph Chehova, Plaintiff's property manager—states that Mr. Chehova is "responsible for managing [Plaintiff's] real estate holdings" and verifies the authenticity of several documents submitted in conjunction with the Motion. *See, e.g.*, [Doc. 47,

¶¶ 1–2, 4] (verifying the authenticity of the Lease and the Guarantees). The Chehova Declaration also attests to the contractual relationship between Plaintiff, 1601 Enterprises, and Mr. BenMoha, and notes that 1601 Enterprises has "never made any rent or other payments to [Plaintiff] under the Lease." *Id.* at ¶¶ 2, 4, 7.

While the Chehova Declaration does not, by its own terms, state that it is "made on [the] personal knowledge" of Mr. Chehova, Mr. Chehova's deposition testimony indicates that the contents of his Declaration are the direct result of his familiarity with Plaintiff's business, the Premises, and the parties' contractual relationship. *See, e.g.*, [Doc. 54-1, p. 2] (during Plaintiff's 30(b)(6) deposition, Mr. Chehova states that he is "authorized by the managing members of [Plaintiff] to speak and work on their behalf"); *id.* (Mr. Chehova states that he manages Plaintiff's properties by "[r]eview[ing] [their] books and records, check[ing] on status of [an] asset, [and] negotiating with tenants . . . ."); *id.* at p. 15 (Mr. Chehova states that he personally drafted a part of Plaintiff's Notice of Default); *id.* at p. 7 (Mr. Chehova states that he personally spoke with 1601 Enterprises regarding issues arising from the Lease).

In addition, the factual content of Defendants' Responses to Plaintiff's Statement of Material Undisputed Facts is nearly identical to the statements made in the Chehova Declaration. *Compare* [Doc. 55, ¶ 1] (where 1601 Enterprises admits to entering into the Lease with Plaintiff) *with* [Doc. 47, ¶ 2] (where the Chehova Declaration states the same); [Doc. 55, ¶ 26] (where Defendants admit that they "ha[ve] not made any payments of Fixed Rent or Operating Expense Payments due to [Plaintiff] under the Lease") *with* [Doc. 47, ¶10] (where the Chehova Declaration states the same); [Doc. 55, ¶¶ 50, 52] (where Defendants admit that Mr. BenMoha personal guaranteed 1601 Enterprise's obligations under the Lease via the Good Guy Guarantee) *with* [Doc.

47, ¶ 4] (where the Chehova Declaration states the same).  Mr. Chehova is thus "competent to testify on the matters stated" in his Declaration.

For these reasons, the Court finds that the Chehova Declaration satisfies the requirements of Federal Rule of Civil Procedure 56(c)(4).

### ii.    *Equitable Estoppel Does Not Preclude Summary Judgment*

1601 Enterprises also argues that summary judgment is inappropriate because:

> From February 2020 until the filing of this adversary proceeding . . . [r]epresentations were made to 1601 Enterprises, assuring it that it would not face default or eviction, and both parties would cooperate to determine a reasonable rent. Given the regular and direct communication between the Plaintiff and 1601 Enterprises regarding these matters . . . Plaintiff's conduct created a reasonable expectation for 1601 Enterprises to rely on, and the current conduct of the Plaintiff is unduly prejudicial to 1601 Enterprises.

*Id.* at pp. 9–10.  The Opposition thus maintains that "[i]n the interest of fairness and justice, the Court should consider [] equitable estoppel" because "granting [] Plaintiff's [M]otion would result in a perversion of justice."  *Id.* at p. 9.

Under New York law,[8] equitable estoppel is a doctrine intended to "prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought." *Valery S. v. Trevor M.*, 867 N.Y.S.2d 379 (Fam. Ct. 2008) (citing *Nassau Trust Co. v. Montrose Concrete Products Corp.*, 56 N.Y.2d 175, 436 N.E .2d 1265 (1982)).  It is also an "extraordinary remedy"

---

[8]      Defendants' Opposition seems to invoke equitable estoppel as a federal bar to Plaintiff's state law breach of contract claims.  *See* [Doc. 52, p. 9] ("In bankruptcy court, the application of equitable principles, including estoppel, is fundamental, as it aligns with the court's nature as essentially a court of equity. The Second Circuit [has] emphasized . . . [that] equitable estoppel, rooted in notions of fair dealing and good conscience, serves to prevent injustice and aids in the just administration of the law.").  However, "[t]here is no question that the New York state doctrine of equitable estoppel is applicable to state-law causes of action in federal court."  *See Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 441 n.4 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014) (collecting cases).

that should be "invoked sparingly and only under exceptional circumstances." *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014). This is especially true in cases dealing with realty. *See F.B. Transit Rd. Corp. v. DRT Const. Co., Inc.*, 661 N.Y.S.2d 367 (N.Y. App. Div. 4th Dept. 1997). In addition, a fundamental tenet of equitable estoppel is reasonable reliance. *See, e.g.*, *Liberty Square Realty Corp. v. Doe Fund, Inc.*, 161 N.Y.S.3d 19, at 26 (N.Y. App. Div. 1st Dept. 2021); *see also Sodus Bay Heights Golf Club, Inc. v. Andrews*, 2002 WL 237037, at *9 (N.Y. Sup. Ct. Feb. 1, 2002) (considering the applicability of equitable estoppel in light of "the equitable considerations of reasonable reliance"); *Clover/Allen's Creek Neighborhood Assn., LLC v. M & F, LLC*, 189 N.Y.S.3d 850, 859–860 (N.Y. Sup. Ct. 2023), *aff'd sub nom. Clover/Allen's Creek Neighborhood Assn. LLC v. M&F LLC*, 222 A.D.3d 1420 (N.Y. App. Div. 4th Dept. 2023).

In this case, 1601 Enterprises claims that it did not abide by the Lease's unambiguous payment obligations because "direct conversations" with Plaintiff indicated that 1601 Enterprises "would not face default or eviction, and [that] both parties would [otherwise] cooperate to determine a reasonable rent." [Doc. 52, p. 9]; [Doc. 53, ¶¶ 19, 22, 24–26] ("Numerous conversations transpired where [1601 Enterprises] conveyed [its] dire financial situation to [Plaintiff] . . . [and Plaintiff] consistently expressed its willingness to collaborate in reaching a reasonable rent agreement."). The Opposition thus argues that "based on these explicit and open discussions, and agreement [sic], 1601 Enterprises reasonably relied on the understanding that an agreement on amount of rent would be reached, allowing it to remain at the Premises and rebuild its business in partnership with [] Plaintiff." [Doc. 52, p. 9].

Section 30.7 of the Lease, however, states unambiguously that its terms "shall not be modified, changed, or supplemented, except by a *written instrument* executed by both parties."

[Doc. 55, p. 3] (emphasis added). New York law provides that, under such circumstances, a party's reliance upon oral modifications to a written contract is *per se* unreasonable.[9] *See Weiss v. Halperin*, 53 N.Y.S.3d 176, at *2 (N.Y. App. Div. 2d Dept. 2017) (equitable estoppel inapplicable because "the note and mortgage state[] that the agreement 'may not be changed or ended orally,'" meaning that the defendant "would not have been justified in relying on the oral agreement to modify its terms . . . ."); *Sparks Associates, LLC v. N. Hills Holding Co. II, LLC*, 941 N.Y.S.2d 695, 697 (N.Y. App. Div. 2d Dept. 2012) ("The prior agreement regarding the sale of the unit . . . provided that it could not be modified except through a signed writing. Therefore, [plaintiff] was not justified in relying on the extension agreement absent [defendant's] execution of [a signed writing] . . . ."); *see also* General Obligations Law § 15-301 ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought . . . ."); *W.W.W. Associates, Inc. v. Giancontieri*, 566 N.E.2d 639, 642 (N.Y. 1990) ("A familiar and eminently sensible proposition of law is that, when parties set down their agreement in a clear, complete document, their writing should as a rule be enforced according to its terms."). Accordingly, because the purported conversations between 1601 Enterprises and Plaintiff did not result in a "written instrument executed by both parties," 1601 Enterprises is not entitled to the protections of equitable estoppel.

---

[9]    The Court assumes—strictly for the purposes of this Motion—that the Opposition's factual allegations are correct. *See Rodriguez v. City of N.Y.*,72 F.3d 1051,1061 (2d Cir. 1995) (at the summary judgment stage, a court must "draw all factual inferences in the light most favorable to the nonmoving party . . . .") (citations and internal quotation marks omitted).

However, because the only evidence in the record of these alleged conversations between 1601 Enterprises and Defendant is an affidavit executed by 1601 Enterprises' Controller titled *Declaration of Samer S. Aboud in Support of Opposition to Summary Judgment Motion, see generally* [Doc. 53], the Court must assume that any agreements regarding modifications to the Lease were exclusively oral.

### iii.    *Plaintiff's Rejection of the Lease Does Not Preclude Summary Judgment*

As noted above, the Plan resulting from Plaintiff's reorganization "rejected [the Lease] pursuant to sections 365 and 1123 of the Bankruptcy Code . . . ." *See* [Ch. 11 Dkt., Doc. 260, p. 38]. The Opposition argues that this rejection "negate[s] any rights that Plaintiff may assert under [the Lease's] terms." [Doc. 52, p. 10].

This argument misunderstands applicable law. Section 365 of the Bankruptcy Code provides that a debtor-in-possession "may assume or reject any executory contract or unexpired lease" subject to certain exceptions.[10] *See* 11 U.S.C. § 365(a); *see also In re Hawker Beechcraft, Inc.,* 486 B.R. 264, 277 (Bankr. S.D.N.Y. 2013) ("Rejection signifies that the debtor will breach the contract and not perform."). However, contrary to the position taken by 1601 Enterprises, a rejection does not operate as a wholesale nullification of the contract, but instead provides a means by which a debtor may end a contract prior to the expiration of its term. *See In re The Drexel Burnham Lambert Group,* 138 B.R. 687, 703 (Bkrtcy.S.D.N.Y.1992) ("[R]ejection merely frees the estate from the obligation to perform; it does not make the contract disappear."); *see also In re Yasin,* 179 B.R. 43, 50 (Bkrtcy.S.D.N.Y.1995) ("[R]ejection constitutes a statutory breach, but does not repudiate or terminate the [contract] . . . ."); *In re Times Square JV LLC,* 648 B.R. 277, 287 (Bankr. S.D.N.Y. 2023) ("A rejection does not terminate the contract."). Plaintiff's rejection of the Lease thus bears only on the *duration* of the Lease; the substantive rights and obligations created by the Lease remain unchanged.[11] *Mission Prod. Holdings, Inc. v. Tempnology,* LLC, 139 S. Ct.

---

[10]    Although Section 365, by its own terms, addresses only the powers of a "trustee," Section 1107 provides that, in a Chapter 11 case, "a debtor in possession shall have all the rights . . . and powers, and shall perform all the functions and duties, except the duties specified in sections 1106(a)(2), (3), and (4) of this title, of a trustee serving in a case under [Chapter 11]." 11 U.S.C. § 1107(a).

[11]    Where—as here—a debtor rejects a lease as a lessor, Section 365(h)(1)(A) provides a lessee with two options:

1652, 1662, 203 L. Ed. 2d 876 (2019) ("When [a rejection] occurs, the debtor and counterparty do

not go back to their pre-contract positions. Instead, the counterparty retains the rights it has

received under the agreement. As after a breach, so too after a rejection, those rights survive."); *In

Re Revel AC, Inc.,* 2016 WL 6155903, at *7 (Bankr. D.N.J. Oct. 21, 2016) ("It is beyond cavil that

rejection differs from termination and does not alter the substantive rights of the parties to the

lease.").   For these reasons, 1601 Enterprises' arguments regarding the Lease's rejection do not

preclude summary judgment.

> ### iv.    *Plaintiff's Alleged Nonperformance Does Not Prevent the Lease's Enforcement*

1601 Enterprises' fourth and final argument in opposition to Plaintiff's breach of contract

claim is as follows:

> The Lease requires that [Plaintiff] provide 1601 Enterprises with advance notice of
> no less than thirty (30) days as to where to pay the Fixed Rent . . . Further, Section
> 7.1 of the Lease states that "Landlord, at Landlord's sole cost and expense, shall
> deliver to Tenant on or before the Commencement Date in connection with Tenant's
> application to the applicable Governmental Authority for a building permit
> regarding the Initial Alterations, a Form ACP-5 or Form ACP-7 duly executed by
> an appropriate party." . . . Having not complied with these pre-requisite terms of
> the Lease, Plaintiff cannot complain that 1601 Enterprises did not comply [with its
> reciprocal obligations under the Lease].

---

(i)    where the rejection constitutes a "breach [that] would entitle the lessee to treat [the] lease as
terminated," the lessee may "treat such lease as terminated by the rejection;" or

(ii)    if "the term of [the] lease has commenced, the lessee may retain its rights under such lease . . . for the
balance of the term of such lease . . . to the extent that such rights are enforceable under applicable
nonbankruptcy law."

11 U.S.C. § 365(h)(1)(A)(i)–(ii).  A rejection by the lessor thus allows the lessee to terminate the parties' contractual
relationship or continue performing for the life of the contract; it does not relieve the lessee of its obligations under
the lease.  *See In re Berris,* 2009 WL 1107634, at *2 (Bankr. S.D. Fla. Apr. 21, 2009) ("Under subsection
(h)(1)(A)(ii), '[i]t is the [lessee's] option to treat the lease as terminated or to remain in possession and comply with
the terms of the lease,'" and a lessee that "remain[s] in possession of the premises for the remainder of the lease
term" is "obligated to comply with the terms of the lease, including the payment of rent and all other charges coming
due thereunder.").

Here, it is undisputed that, following the Lease's rejection, 1601 Enterprises has continued to use the Premises for
the operation of the Restaurant.  *See generally* [Doc. 55].  Because 1601 Enterprises has elected to "retain its rights
under [the] [L]ease," the Bankruptcy Code simply subjects 1601 Enterprises' post-rejection rights to "applicable
nonbankruptcy law" within the meaning of Section 365(h)(1)(A)(ii).

[Doc. 52, pp. 11–12]. This argument is unpersuasive as a matter of law. New York law clearly

provides that—even if Plaintiff did not comply with its own Lease obligations—1601 Enterprises

would "still be obligated to . . . pay [] because there was no express provision in the lease relieving

[1601 Enterprises] of its obligation to pay [] in the event [Plaintiff] breached." *A&R Real Est.,*

*Inc. v. Dorian New York LLC*, 2023 WL 6257267, at *11 (S.D.N.Y. Sept. 26, 2023) (citing

*Universal Commc'ns Network, Inc. v. 229 W. 28th Owner, LLC*, 926 N.Y.S.2d 479, 480 (App. Div.

2011)); *see also Port Morris Distillery, Inc. v. Glob. Est. LLC,* 2024 WL 117304, at *1 (N.Y. App.

Div. Jan. 11, 2024) ("Plaintiff's contention that defendants frustrated its ability to use and enjoy its

lease is unavailing, as 'the obligation to pay rent pursuant to a commercial lease is an independent

covenant, and . . . cannot be relieved by allegations of a landlord's breach, absent an express

provision to the contrary . . . .'"); *Triple M. Roofing Corp. v. Farmingdale Union Free Sch. Dist.*,

26 A.D.3d 323, 325 (N.Y. App. Div. 2006) (finding that "conclusory affirmations" of defective

performance "failed to establish . . . [a] right to reduce what [plaintiff] was owed under the

contract"). This argument is thus insufficient to defeat summary judgment.

### v.    *Summary Judgment is Appropriate as to Plaintiff's Claim Against 1601 Enterprises*

Under New York law, a plaintiff asserting a breach of contract claim must establish: (i) the

existence of an agreement; (ii) adequate performance of the contract by the plaintiff; (iii) breach

of contract by the defendant; and (iv) damages. *Design Partners, Inc. v. Five Star Elec. Corp*.,

2018 WL 3636700, at *9 (E.D.N.Y. Feb. 24, 2018) (citing *Eternity Global Master Fund Ltd. v.*

*Morgan Guar. Trust Co. of N.Y.,* 375 F.3d 168, 177 (2d Cir. 2004)).

Plaintiff has carried its burden with respect to its claim against 1601 Enterprises. First, it

is undisputed that 1601 Enterprises and Plaintiff properly executed the Lease on April 9, 2019. *See*

[Doc. 47-1, p. 1]; *see also* [Doc. 55, p. 2]. Additionally, because the record indicates that 1601

Enterprises has—to date—enjoyed continued possession of the Premises since August 2, 2019, the

Court finds that Plaintiff has adequately performed its obligations under the Lease. [12] *See* [Doc.

55, p. 4] (admitting that "1601 Enterprises has been in possession of the Premises at all times since

August 2, 2019 and refuses to vacate the premises"); *see also* [Doc. 58, p. 10] (noting that

Defendants "do not dispute that they took possession of the Premises (and remain in Possession to

this day)").

    The Court further finds that 1601 Enterprises is in breach of its obligations under the Lease.

It is undisputed that:

(i)     under the unequivocal terms of the Lease, 1601 Enterprises' obligation to pay Fixed
        Rent and Operating Expenses began on February 28, 2020, and continued until June
        8, 2023, ten business days after the Lease was Terminated in accordance with Section
        19.2, [Doc. 55, pp. 6–7, 14];

(ii)    although the Lease was properly Terminated in accordance with its terms, 1601
        Enterprises has failed to "quit and surrender the Premises" to Plaintiff as required by
        Section 19.2, *id.* at p. 4; and

(iii)   notwithstanding the payment obligations imposed by the Lease, 1601 Enterprises has
        not paid Fixed Rent or Operating Expenses for all of the First Rental Period and much
        of the Second Rental Period, which qualifies as an "Event of Default" under Section
        19.1(A), *see id.* at p. 8.

    As to damages, it is likewise undisputed that:

(i)     Section 19.2 of the Lease provides that, upon Termination, "all rights of [1601
        Enterprises] under this Lease shall expire and terminate . . . and [1601 Enterprises]
        immediately shall quit and surrender the Premises, but [1601 Enterprises] shall
        nonetheless remain liable for all of its obligations hereunder," *see id.* at p. 9;

(ii)    Section 22.1 provides that a Termination resulting from an Event of Default obligates
        1601 Enterprises to "pay to [Plaintiff] an amount equal to the actual costs, including,

---

[12]     As discussed *supra*, Part II(a)(iv), the Opposition makes much of the fact that Plaintiff allegedly "[h]a[s]
not complied with [certain] pre-requisite terms of the Lease . . . ." [Doc. 52, pp. 11–12]. The Court has, however,
already found that 1601 Broadway's payment obligations are, under New York law, "independent covenant[s] . . .
[that] cannot be relieved by allegations of a landlord's breach, absent an express provision to the contrary," and the
Opposition does not identify any other instances of Plaintiff's non-performance. *See Port Morris Distillery, Inc. v.
Glob. Est. LLC*, 2024 WL 117304, at *1 (N.Y. App. Div. Jan. 11, 2024).

without limitation, attorneys' fees, expenses and disbursements, that Landlord incurs in (i) enforcing any obligation of [1601 Enterprises] or right of [Plaintiff] pursuant to this Lease . . . or (ii) instituting or prosecuting any legal proceeding against [1601 Enterprises] . . . together with interest," *see id.* at p. 12; and

(iii)   in the event 1601 Enterprises occupies the Premises beyond the Termination Date, Section 23.2 provides that 1601 Enterprises is liable for "Holdover Damages" in an amount dictated by the terms of Section 23.2, *see id.* at p. 11.

Under New York law, terms such as those listed above are regularly enforced,[13] as "[a] complete, clear, and unambiguous agreement must be enforced according to the plain meaning of its terms . . . ." *See PRG Associates LP v. Planet Organic Holding Corp.*, 169 N.Y.S.3d 647, 648 (N.Y. App. Div. 2d Dept. 2022); *see also White Plains Plaza Realty, LLC v. Town Sports Intern., LLC,* 914 N.Y.S.2d 222, 225 (N.Y. App. Div. 2d Dept. 2010) ("[W]hen parties set down their agreement in a clear, complete document, their writing should . . . be enforced according to its terms . . . [and] [t]his rule is especially important in commercial transactions negotiated between sophisticated parties . . . ."). For these reasons, there is no material factual dispute as to the elements of Plaintiff's breach of contract claim against 1601 Enterprises, and summary judgment is therefore GRANTED with respect to that claim.

---

[13]     *See, e.g.*, *Trustees of Columbia U. in City of New York v. D'Agostino Supermarkets, Inc.,* 162 N.E.3d 727, 732 (N.Y. 2020) ("When defendant breached the [] Agreement, plaintiff was entitled to proceed under that contract and demand damages for the breach, including the amount past due and acceleration of the remaining installment payments."); *U.S. Bank Nat. Ass'n v. Sw. Airlines Co.*, 2009 WL 2163594, at *12 (S.D.N.Y. July 20, 2009) ("Under New York law, a contract that provides for an award of reasonable attorneys' fees to the prevailing party in an action to enforce the contract is enforceable if the contractual language is sufficiently clear."); *Fairfield Lease Corp. v. Marsi Dress Corp.*, 303 N.Y.S.2d 179, 182 (N.Y. Civ. Ct. 1969) ("A contract may provide for the payment of attorneys' fees by a defaulting party . . . ."); *PRG Associates LP v. Planet Organic Holding Corp.*, 169 N.Y.S.3d 647, 648 (N.Y. App. Div. 2d Dept. 2022) ("Pursuant to the express terms of the lease agreement, Mrs. Green's became a 'holdover tenant' after the expiration of the lease term."); *White Plains Plaza Realty, LLC v. Town Sports Intern., LLC,* 914 N.Y.S.2d 222, 224 (N.Y. App. Div. 2d Dept. 2010) (finding that the landlord was "entitled to damages on its first cause of action . . . [for] 200% of the monthly rent payable for September 2006" because "the plain language of . . . the lease provides for the payment of [that amount] . . . [if the tenant] failed to surrender the premises after the termination date").

18

III.    **PLAINTIFF'S CLAIMS AGAINST MR. BENMOHA**

Plaintiff next argues that summary judgment is appropriate with respect to the breach of

contract claim against Mr. BenMoha because:

> [Mr.] BenMoha admits that: (i) he executed the Guaranties, in which he agreed to
> fully and timely guaranty [] 1601 Enterprises' performance of obligations,
> including making an absolute and unconditional guaranty of payment and
> performance of [] 1601 Enterprises' Fixed Rent and Operating Expense Payment
> obligations; (ii) [] 1601 Enterprises never paid Fixed Rent or Operating Expense
> Payments owed under the Lease; and (iii) notwithstanding that [] 1601 Enterprises
> has failed to make these required payments under the Lease, [Mr.] BenMoha has
> not made payments of those amounts . . . [and] [Mr.] BenMoha has also breached
> the Guaranties by failing to make payment of the holdover amounts Defendant 1601
> Enterprises owes under the Lease.

[Doc. 45, pp. 19–20].  Plaintiff thus seeks an "award of damages under the Good Guy Guaranty in

the full amount of Fixed Rent, Operating Expense Payments, and holdover damages owed by []

1601 Enterprises, and up to the Guaranty Cap under the Limited Guaranty, and attorneys' fees and

disbursements pursuant to Section 13 of both Guaranties."  *Id.*

Mr. BenMoha does not dispute the terms of the Guarantees or the factual basis for

Plaintiff's breach of contract claim.  *See generally* [Doc. 55].  Mr. BenMoha does, however, argue

that the Guarantees are unenforceable because:

> [Former] Governor Andrew Cuomo's Executive Order 202.3 and NY
> Administrative Code § 22-1005 [collectively, the "Guaranty Law"] . . . prohibits
> [the] enforceability [of] a natural person's guaranty of commercial lease obligations
> under two conditions: (i) the tenant's operations were halted or restricted under
> March 2020 COVID-related executive orders, and (ii) the default or event causing
> the natural person to become wholly or partially personally liable occurred between
> March 7, 2020, and June 30, 2021, inclusive.

[Doc. 52, pp. 12–13].  Defendants thus maintain that—given both the Guaranty Law and its

application in *301 West 96th LP v. Chauca*, 2023 WL 4565014 (N.Y. Sup. Ct. 2023)—Mr.

BenMoha cannot be held liable for the Lease payments due between March 2020 and July 2021.[14]
*Id.* at p. 13.

The Court finds Mr. BenMoha's position unpersuasive.  At least one District Court in the Southern District of New York—considering an identical argument—has already concluded that the Guaranty Law "violates the Contracts Clause by rendering [] guaranty clauses in [] commercial leases unenforceable for unpaid rent during the covered period, March 7, 2020 and June 30, 2021 . . . ."  *See Melendez v. City of New York,* 668 F.Supp.3d 184, 197 (S.D.N.Y. 2023) (analyzing the constitutional concerns implicated by the Guaranty Law); *accord*, *Mark Propco LLC v. Noro,* 2023 N.Y. Misc. LEXIS 5362, at *4 (N.Y. Sup. Ct. 2023) ("This court agrees that the reasoning in *Melendez* is thorough and sound, and should apply to the instant action."); *Dongqi 79 Alumni, Inc. v. United POS Inc*., 2023 N.Y. Misc. LEXIS 3325, *7 (N.Y. Sup. Ct. 2023) (citing *Melendez* and finding that the defendant-guarantor's "affirmative defense is also without merit as the ban on enforcing personal guarantees in connection with commercial leases was recently ruled unconstitutional"); *Kensington House NY LLC v. Accardi*, 2023 N.Y. Misc. LEXIS 2457, at *3–4 (N.Y. Sup. Ct. 2023) ("[T]he Court adopts the reasoning in *Melendez* and permits plaintiff to amend to seek unpaid rent (pursuant to the guaranty) for the period previously covered by Section 22-1005.").[15]

---

[14]      In *301 West 96th LP v. Chauca*, the Supreme Court for the State of New York found that the Guaranty Law rendered a personal guaranty unenforceable between March 2020 through June 2021 and therefore "barred [the plaintiff] from seeking rent or additional rent from defendants for th[ose] months."  2023 WL 4565014, at *2–3 (N.Y. Sup. Ct. 2023) (finding "all arguments advanced by plaintiff with respect to the unconstitutionality and inapplicability of the [G]uaranty [L]aw . . . unavailing").

[15]      Although several state courts have endorsed *Melendez*'s reasoning, the Court notes that *Melendez*'s adoption has not been uniform. *See Mansion Realty LLC v. 656 6th Ave Gym LLC,* 190 N.Y.S.3d 259, 264 n.4 (N.Y. Sup. Ct. 2023), *reargument denied*, 192 N.Y.S.3d 480 (N.Y. Sup. Ct. 2023) ("The U.S. District Court for the Southern District of New York recently held that § 22-1005 violated the Contracts Clause of the U.S. Constitution . . . [but] [t]hat decision does not bind the courts of New York State so as to alter this court's analysis of landlord's claim for rent accruing between June 2020 and June 2021.") (internal citations omitted); *141 Ave. A Associates, LLC v. Sneak EZ LLC*, 196 N.Y.S.3d 697 (N.Y. Sup. Ct. 2023) ("[T]his court is not bound by *Melendez*."); *but see 513 W. 26th Realty LLC v. George Billis Galleries, Inc.,* 197 N.Y.S.3d 48, 49 (N.Y. App. Div. 1st Dept. 2023) (finding that

In short, although the Opposition correctly summarizes the holding of *301 West 96th LP*, that decision is directly contrary to the conclusions reached by the District Court in *Melendez* and therefore does not prevent the enforceability of the Guarantees in this proceeding.  Because Mr. BenMoha does not dispute the terms of the Guarantees or the factual basis for Plaintiff's breach of contract claim, *see generally* [Doc. 55], the Court finds that summary judgment is proper as to that claim.  The Motion is therefore GRANTED as to the breach of contract claim against Mr. BenMoha.

## IV.    **PLAINTIFF'S ENTITLEMENT TO DECLARATORY RELIEF**

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).  The language "case of actual controversy" is a "refer[ence] to the [same] 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007).  A "case of actual controversy" thus exists when "there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Principal Life Ins. Co. v. Brand*, 2023 WL 8270721, at *5 (2d Cir. Nov. 30, 2023) (internal quotations omitted).

However, the Declaratory Judgment Act "confers a discretion on the courts rather than an absolute right upon the litigant." *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd.*, 2023 WL 3868585, at *14 (S.D.N.Y. June 7, 2023) (citing *Pub. Serv. Comm'n v. Wycoff Co.*, 344 U.S. 237, 241 (1952)).  Accordingly, "[e]ven where an actual controversy has been established, a

---

"[i]n view of the recent decision in *Melendez* . . . we remand the constitutional question raised by the parties here so the parties can further develop the record in the trial court for the purpose of applying the Contracts Clause test for constitutionality . . . .").

court must still decide whether it will exercise its discretion to entertain a request for declaratory judgment." *Id*.

In this case, Plaintiff requests "a declaration that: (i) the Lease and Term expired pursuant to Section 19.2 of the Lease on June 8, 2023 (i.e., ten Business Days after the delivery of the Notice of Termination), (ii) the Expiration Date of the Lease was June 8, 2023; and (iii) [] 1601 Enterprises must 'quit and surrender' the Premises to [Plaintiff] 'vacant, broom-clean, in good order and condition.'" [Doc. 45, p. 17].

However, with respect Plaintiff's breach of contract claims, the Court has already found that 1601 Enterprises breached the Lease by, *inter alia*, failing to "pa[y] Fixed Rent or Operating Expenses for all of the First Rental Period and much of the Second Rental Period" and by "failing to surrender the Premises after [that date]." *See supra*, Part II(a)(v). The Court has therefore already determined (among other things) that: (i) the Lease terminated pursuant to Section 19.2 on June 8, 2023; and (ii) 1601 Enterprises caused Plaintiff damages by failing to "quit and surrender" the Premises to Plaintiff "vacant, broom-clean, in good order and condition" as contemplated by Section 23.1 of the Lease. The declaratory judgment claim against 1601 Enterprises is thus duplicative of Plaintiff's breach of contract claim and, accordingly, the Court finds that declaratory relief would be unnecessary. *See Nwoye v. Obama*, 2023 WL 4631712, at *12 (S.D.N.Y. July 20, 2023), *report and recommendation adopted*, 2023 WL 5164156 (S.D.N.Y. Aug. 11, 2023) (collecting cases and noting that "[c]ourts frequently find that a declaratory judgment will not serve a useful purpose when the claim is duplicative of another claim in the same action"); *Frontier Airlines, Inc. v. AMCK Aviation Holdings Ireland Ltd*., 2023 WL 3868585, at *15 (S.D.N.Y. June 7, 2023) (finding declaratory relief inappropriate because "[a]ny 'cloud of uncertainty' regarding the scope and enforceability of the [contracts] will be dispelled in litigation of the breach of

contract claim, which also provides for damages"). The Motion is therefore DENIED as to Plaintiff's declaratory judgment claim.

## V.    **DEFENDANTS' COUNTERCLAIMS**

Lastly, the Motion argues that Plaintiff is entitled to summary judgment "dismissing Defendants' Counterclaims for a declaration that the Notice of Default and Notice of Termination are 'null, void, and ineffective' and for a Section 365(h) election." [Doc. 45, p. 20]; *see also* [Doc. 10, ¶¶ 152–59] (where, in their answer, Defendants assert a claim under the Declaratory Judgment Act and a claim "under Bankruptcy Code Section 365(h)(a)(ii) to retain its rights under the Lease as more fully set forth in such statutory section"). Defendants' Opposition does not oppose this request. *See generally* [Doc. 52]. The Motion is therefore GRANTED in this regard, and Defendants' counterclaims are DISMISSED.

### CONCLUSION

For the reasons set forth above, the Court GRANTS the Motion in part and DENIES the Motion in part, and it is hereby

ORDERED that, in accordance with the terms of the Lease, 1601 Enterprises is liable for:

(i)    Fixed Rent in an amount of $66,666.67 per month for the entirety of the First Rental Period; and

(ii)    Fixed Rent in the amount of $83,333.34 per month from February 28, 2022, until June 8, 2023; and

(iii)    the monthly "Operating Expense" in the amount(s) designated by Exhibit 2.1 of the Lease, for the period beginning February 28, 2020, and ending June 8, 2023; and

(iv)    Holdover Damages in the amount dictated by the terms of Section 23.2 of the Lease; and

(v)    the "actual costs, including, without limitation, attorneys' fees, expenses and disbursements . . . together with interest" incurred by Plaintiff in enforcing its rights under the Lease, as provided by Section 22.1; and

it is further ORDERED that, in accordance with the terms of the Good Guy Guarantee and the Limited Guarantee, Mr. BenMoha is liable for the moneys due by 1601 Enterprises under the Lease, subject to the maximum cumulative liability provided by Section 2(A) of the Limited Guarantee; and

it is further ORDERED that, on or before March 22, 2024, Plaintiff shall supplement the record with a declaration establishing:

(i)     the total amount of Fixed Rent and Operating Costs presently due under the Lease;

(ii)    the total amount of Holdover Damages presently due under the Lease;

(iii)   the total amount of "attorneys' fees, expenses and disbursements" incurred in enforcing its rights under the Lease; and

(iv)    the full extent of Mr. BenMoha's liability under the terms of the Guarantees.


**IT IS SO ORDERED.**

Dated: <u>March 11, 2024</u>
New York, New York


<u>/S/ John P. Mastando III</u>
HONORABLE JOHN P. MASTANDO III
UNITED STATES BANKRUPTCY JUDGE